1  KEKER & VAN NEST LLP
   JOHN W. KEKER, SBN 49092
2  Email: JKeker@kvn.com
   ELLIOT R. PETERS, SBN 158708
3  Email: EPeters@kvn.com
   MICHAEL D. CELIO, SBN 197998
4  Email: MCelio@kvn.com
   BENJAMIN B. AU, SBN 237854
5  Email: BAu@kvn.com
   710 Sansome Street
6  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
7  Facsimile:  (415) 397-7188

8  CALDWELL LESLIE & PROCTOR, PC
   ANDREW ESBENSHADE, SBN 202301
9  Email: esbenshade@caldwell-leslie.com
   1000 Wilshire Boulevard, Suite 600
10 Los Angeles, CA  90017-2463
   Telephone:  (213) 629-9040
11 Facsimile:  (213) 629-9022

12 Attorneys for Defendant BRUCE KARATZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. CR No. 09-0203-ODW |
|---|---|
| Plaintiff, | **DEFENDANT BRUCE KARATZ'S NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29; MEMORANDUM OF POINTS & AUTHORITIES** |
| v. | |
| BRUCE KARATZ, | |
| Defendant. | |
| | Dept:   11 |
| | Judge:  Hon. Otis D. Wright II |

TO THE UNITED STATES OF AMERICA AND ITS COUNSEL OF RECORD:

    PLEASE TAKE NOTICE that at a date and time to be determined by this Court, Defendant Bruce Karatz will, and hereby does, move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.  The motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Michael D. Celio, the pleadings, records, and files in this action, all matters of which this Court may take judicial notice, and any evidence or argument that may be presented at the hearing.

Dated:  March 30, 2010                           KEKER & VAN NEST LLP

                                        By: */s/ John W. Keker*
                                            JOHN W. KEKER
                                            Attorneys for Defendant
                                            BRUCE KARATZ

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government has failed to establish essential elements of each of the counts alleged against defendant Bruce Karatz. The Court should dismiss this case now.

## II. ARGUMENT

Rule 29(a) provides that the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The court in *Curley v. United States*, 160 F.2d 229 (D.C. Cir. 1947), explained the purpose of Rule 29 and formulated "the prevailing criterion for judging motions for acquittal in federal criminal trials." *Jackson v. Virginia*, 443 U.S. 307, 319 n.11 (1979); *see also* 2A Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure: Criminal § 467 (4th ed. 2009) (*Curley*'s "formulation is universally accepted by the courts"). Rule 29 codifies the "function of the judge to deny the jury any opportunity to operate beyond its province. The jury may not be permitted to conjecture merely, or to conclude upon pure speculation or from passion, prejudice or sympathy." *Curley*, 160 F.2d at 232. To allow the jury to decide a defendant's guilt where any reasonable mind would doubt it is to invite a decision on impermissible grounds. "If the evidence is such that reasonable jurymen must necessarily have such a doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration." *Id*.[1]

### A. The Government Has Failed to Prove Its Case

"[W]hen there is an innocent explanation for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, the

---

[1] *See also*, *e.g.*, *United States v. Lopez*, 484 F.3d 1186, 1200-01 (9th Cir. 2007) (*en banc*); *United States v. Cassese*, 428 F.3d 92, 103 (2d Cir. 2005) (Rule 29 motion properly granted in securities case because, "when the evidence is viewed in its totality, the evidence of willfulness is insufficient to dispel reasonable doubt on the

Government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one." *United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir. 2004). Put differently, Mr. Karatz must be acquitted if the evidence fails to establish "that an innocent explanation of that evidence was any less likely than the incriminating explanation advanced by the government." *United States v. Vasquez-Chan*, 978 F.2d 546, 551 (9th Cir. 1992).

In this case, the government has failed to present sufficient evidence to sustain a conviction on any of the twenty counts in the Indictment. Indeed, it has not proven each of the essential elements of the crimes charged beyond a reasonable doubt and has thus failed to provide, in support of any charge, a basis upon which a rational juror could find Mr. Karatz guilty.  For these reasons, Mr. Karatz must be acquitted on all counts and the jury should be discharged.

**B.    The Court should enter a judgment of acquittal as to any alleged violations of 18 U.S.C. § 1346.**

This Court also should enter a judgment of acquittal as to Karatz's alleged violations of 18 U.S.C. § 1346 because that statute is unconstitutionally vague—as the United States Supreme Court is poised to hold.

Congress passed section 1346 in response to the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350 (1987).  There, the Court overturned lower court decisions that had interpreted the mail fraud statute to apply not only to dishonest schemes to deprive others of money or property—as the term "defraud" suggests—but also to schemes designed to deprive others of "intangible rights, such as the right to have public officials perform their duties honestly." *Id.* at 358. Such a broad construction leaves the outer bounds of the statute "ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials." *Id.* at 360.  The Court held that if

part of a reasonable fact finder").

1  Congress means to protect more than property rights, "it must speak more clearly
2  than it has." *Id.*
3      Congress "spoke" the following year: "For the purposes of this chapter, the
4  term 'scheme or artifice to defraud' includes a scheme or artifice to deprive
5  another of the intangible right of honest services."  18 U.S.C. § 1346, 102 Stat.
6  4508 (1988).  As Justice Scalia recently stated, however, "[w]hether that terse
7  amendment qualifies as speaking 'more clearly' or in any way lessens the
8  vagueness and federalism concerns that produced this Court's decision in *McNally*
9  is another matter."  *Sorich v. United States*, 129 S.Ct 1308, 1309 (2009) (Scalia, J.,
10 dissenting from denial of certiorari).  The Supreme Court has taken up that
11 question in three pending cases—*Skilling v. United States*, No. 08-1394, *Black v.
12 United States*, No. 08-876, and *Weyhrauch v. United States*, No. 08-1196—and all
13 indications are that it will strike down section 1346 as unconstitutionally vague.
14 Rightly so.
15     A criminal statute must "define the criminal offense with sufficient
16 definiteness that ordinary people can understand what conduct is prohibited and in
17 a manner that does not encourage arbitrary and discriminatory enforcement."
18 *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  If a statute does not satisfy these
19 two criteria, it is void for vagueness.  *Id.*  The Supreme Court has recognized that
20 "the requirement that a legislature establish minimal guidelines to govern law
21 enforcement" is particularly important.  *Id*. at 358 (quoting *Smith v. Goguen*, 415
22 U.S. 566, 574 (1974)).  "Where the legislature fails to provide such minimal
23 guidelines, a criminal statute may permit a standardless sweep that allows
24 policemen, prosecutors, and juries to pursue their personal predilections."  *Id.*
25 (quotation marks and brackets omitted).  Congress cannot "set a net large enough
26 to catch all possible offenders, and leave it to the courts to step inside and say who
27 could be rightfully detained, and who should be set at large.  This would, to some
28 extent, substitute the judicial for the legislative department of government."  *Id.* at

3

358 n.7 (quoting *United States v. Reese*, 92 U.S. 214, 221 (1876)).

Section 1346 is void for vagueness both because ordinary people cannot tell what is prohibited, and because, in Justice Scalia's words, it "invites abuse by headline-grabbing prosecutors in pursuit of local officials, state legislators, and corporate CEOs who engage in any manner of unappealing or ethically questionable conduct." *Sorich*, 129 S. Ct. at 1310. Everyone agrees that when Congress amended section 1346 to define "scheme or artifice to defraud" to include "a scheme or artifice to deprive another of the intangible right of honest services," it meant to refer to the pre-*McNally* body of law. *See*, *e.g.*, *United States v. Rybicki*, 354 F.3d 124, 136-37 (2d Cir. 2003). But what, exactly, was prohibited under the pre-*McNally* law, and is now prohibited by section 1346, is anything but clear, leaving the government to make it up as it goes along—as it has done here. *See Sorich*, 129 S. Ct. at 1310.

Indeed, at the oral arguments in *Skilling*, *Black*, and *Weyrauch*, every Justice except Justice Thomas voiced concerns—most of them insurmountable—about the vagueness and overbreadth of section 1346:

> And that – that is how a lawyer is supposed to advise his client. He says, well, what this means is the core of pre-*McNally* cases. (Laughter.) And he – and he sends him off to read the pre-*McNally* cases. And I have to tell you, they are a mess, I don't understand them at all. It's one of the reasons *McNally* came out the way it did. [The government] speak[s] as though it's up to us to write the statute. We can make it mean whatever it – you know, whatever would – would save it or whatever we think is a good idea, but that's not our job. What – what does the statute say? And if all it does is refer us to the pre-*McNally* cases, I'm at – I'm at sea. Declaration of Michael D. Celio ("Celio Decl."), Ex. A (12/8/2009 transcript in *Black v. United States*) at 45-46 (**Scalia**, J.).[2]

> How could ["honest services"] have been a term of art when the courts – the lower courts were massively confused? . . . [T]here wasn't even a uniform terminology in the lower courts. *Id.* at 29 (**Ginsburg**, J.).

---

[2] Unless indicated otherwise, exhibit references are to the accompanying Declaration of Michael D. Celio. The transcripts of the oral arguments in *Black*, *Weyrauch*, and *Skilling* are also available at http://www.supremecourtus.gov/oral_arguments /argument_transcripts/08-876.pdf, /08-1196.pdf, and /08-1196.pdf, respectively.

> I mean, you need lawyers and research before you get an idea of what the pre-*McNally* state of the law was with respect to . . . the right to intangible services, of honest services. . . . It kind of – it puts the prospective defendant, I guess, in an awfully difficult position, though if he has got to wait [for a definition from the Supreme Court]. There this common law evolution. Two cases the government wins, one it loses and . . . he's supposed to keep track of that. That doesn't sound like fair notice of what's criminal. Celio Decl., Ex. B (3/1/2010 transcript in *Skilling v. United States*) at 46-47 (**Roberts**, C.J.).

> Every worker is an agent of his master, the employer. So every instance in which a worker does not provide honest services to the employer, he has met [the government's] test. I think there are . . . perhaps there are 150 million workers in the United States. I think possibly 140 of them would flunk [the government's] test. . . . When the criminal code was reenacted and never was, one kind of joke was that it would be – there would be one law. The law would be it is a crime to do wrong, okay? "It is a crime to do wrong." . . . Now you see the problem? It may be you would never prosecute it. It may be a jury would never convict. But that isn't the basis for having a statute that picks up 80 or 100 million people. *Id.*, Ex. A at 30, 35-36 (**Breyer**, J.)

> It seems to me that even if there is some economic harm [to the employer] . . . that could still not meet the materiality requirement . . . [so] [t]here is no bright-line rule just based on economic harm versus everything else. *Id.* at 41 (**Stevens**, J.).

> Were there any pre-*McNally* cases that involved a situation like this, where the benefit to the employee was in the form of the employee's disclosed compensation? *Id.*, Ex. B at 52 (**Alito**, J.).

> Well, a concession that a bribe or a kickback scheme statute would not be vague is hardly a concession that this statute as written is not vague. In fact, I thought that was the point. The point is that the courts shouldn't rewrite the statute; that's for the Congress to do. *Id.* at 43 (**Kennedy**, J.).

> Where did he draw the line and where do we go to look to where you draw the line on what information needs to be disclosed? . . . I'm troubled because the issue of disclosure creates a Federal common law of what's important to tell either the public or a private employer. *Id.*, Ex. A at 44 (**Sotomayor**, J.).[3]

Here, we have yet another "pushing the envelope" prosecution. *See id.* The government claims that Bruce Karatz breached some federal duty to disclose that options were backdated, when, in fact, he didn't keep that secret from anyone, and

---

[3] *See also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 490 (2001) ("[U]nder our constitutional system . . . federal crimes are defined by statute rather than by common law.").

everyone—including the lawyers and the head of the compensation committee who authorized it, and certainly Karatz, who relied on them—believed the practice was perfectly legal.  There isn't a single pre-*McNally* case that comes close to this fact pattern.  The core of "honest services" cases involve bribery or kickbacks, and thus are inapposite here.  *See*, *e.g.*, *Rybicki*, 354 F.3d at 139-40.  And according to the Second Circuit in *Rybicki*, on which the government relies here, the only other category of conduct prohibited by the pre-*McNally* cases is "self-dealing" by a defendant who "typically causes his or her employer to do business with a corporation or other enterprise in which the defendant has a secret interest, undisclosed to the employer." *Id.* at 140.  Nothing of the kind occurred here. There was no reason for Bruce Karatz or anyone else to think that the company's "intangible right of honest services" was violated by the conduct at issue.  "It is simply not fair to prosecute someone for a crime that has not been defined until the judicial decision that sends him to jail." *Sorich*, 129 S. Ct. at 1310.

Thus, section 1346 is unconstitutionally vague across the board, and certainly as applied here.  This Court should enter a judgment of acquittal as to Karatz's alleged violation of this unconstitutional statute.

### III.   CONCLUSION

The government has proved only that Mr. Karatz was involved in the retroactive dating of stock options.  In effect, the government has only proved that which was never disputed: "backdating."  And, as this Court has emphasized time and again, backdating is not illegal.  The government did not prove that Mr. Karatz intended to deceive anyone.  And it did not prove that Mr. Karatz's actions were material. The government has proven—at most—backdating.  That in and of itself is not a crime.  And, that is not enough to convict Mr. Karatz of the crimes charged.

| | | |
|---|---|---|
| 1 | Dated: | KEKER & VAN NEST LLP |
| 2 | | |
| 3 | | By: */s/ John W. Keker* |
| 4 | | JOHN W. KEKER<br>Attorneys for Defendant |
| 5 | | BRUCE KARATZ |