KEKER & VAN NEST LLP
JOHN W. KEKER, SBN 49092
Email: JKeker@kvn.com
ELLIOT R. PETERS, SBN 158708
Email: EPeters@kvn.com
MICHAEL D. CELIO, SBN 197998
Email: MCelio@kvn.com
BENJAMIN B. AU, SBN 237854
Email: BAu@kvn.com
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

O'MELVENY & MYERS LLP
SRI SRINIVASAN, SBN 205145
Email: ssrinivasan@omm.com
JONATHAN HACKER
(*pro hac vice pending*)
Email: jhacker@omm.com
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

CALDWELL LESLIE & PROCTOR, PC
ANDREW ESBENSHADE, SBN 202301
Email: esbenshade@caldwell-leslie.com
1000 Wilshire Boulevard, Suite 600
Los Angeles, CA 90017-2463
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant BRUCE KARATZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE KARATZ,<br><br>Defendant. | Case No. CR No. 09-0203-ODW<br><br>**DEFENDANT BRUCE KARATZ'S NOTICE OF MOTION AND MOTION FOR A JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>**(Declaration of Michael D. Celio and [Proposed] Order filed concurrently herewith)**<br><br>Dept: 11<br>Judge: Hon. Otis D. Wright II<br><br>Trial Date: March 9, 2010 |

497417.02

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR A JUDGMENT OF ACQUITTAL
PURSUANT TO FED. R. CRIM. P. 29
CASE NO. CR 09-203-ODW

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................... 2

III.    ARGUMENT ......................................................................................... 3

        A.      Acquittal Is Warranted On The Mail Fraud Counts
                (Counts Six And Seven) Because The Evidence Is
                Insufficient To Establish Use Of The Mails Beyond A
                Reasonable Doubt ................................................................... 4

                1.      Hirst Report (Count Seven) ......................................... 5

                2.      Ernst & Young Management Representation Letter
                        (Count Six) ................................................................... 8

        B.      Acquittal Is Also Necessary On Counts Six And Seven
                Because The Evidence Is Insufficient To Establish
                Honest-Services Or Money-Or-Property Fraud ................... 12

                1.      Honest Services ........................................................ 12

                2.      Money or Property ..................................................... 13

        C.      The Government's Proof Of Materiality For The
                Statements Alleged In Count Nineteen Failed As A
                Matter Of Law And Fact ....................................................... 15

        D.      Under The Proper Instruction For Materiality In Count
                Twenty, The Government Failed To Establish That The
                False Statements Were Material ............................................ 17

IV.     CONCLUSION ................................................................................... 17

i

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR A JUDGMENT OF ACQUITTAL
PURSUANT TO FED. R. CRIM. P. 29
CASE NO. CR 09-203-ODW

497417.02

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## Federal Cases

*Basic, Inc. v. Levinson*
   485 U.S. 224 (1988) ................................................................................ 15

*Grunewald v. United States*
   353 U.S. 391 (1957) ................................................................................ 14

*Jackson v. Virginia*
   443 U.S. 307 (1979) .................................................................................. 3

*LaFlamboy v. Landek*
   587 F. Supp. 2d 914 (N.D. Ill. 2008) ....................................................... 7

*Livid Holdings, Ltd. v. Salomon Smith Barney, Inc.*
   416 F.3d 940 (9th Cir. 2005) .................................................................. 15

*SEC v. Papa*
   555 F.3d 31 (1st Cir. 2009) ............................................................... 13, 15

*United States v. Brackenridge*
   590 F.2d 810 (9th Cir. 1979) .................................................................. 11

*United States v. Brooks*
   748 F.2d 1199 (7th Cir. 1984) ......................................................... 4, 8, 12

*United States v. Dondich*
   506 F.2d 1009 (9th Cir. 1974) .................................................................. 4

*United States v. Hannigan*
   27 F.3d 890 (3d Cir. 1994) .................................................................. 9, 11

*United States v. Hart*
   693 F.2d 286 (3rd Cir. 1982) ............................................................... 6, 7

*United States v. Joyce*
   499 F.2d 9 (3d Cir. 1974) .................................................................... 9, 10

*United States v. Kellam*
   568 F.3d 125 (4th Cir. 2009) .................................................................. 12

*United States v. Lazarenko*
   564 F.3d 1026 (9th Cir. 2009) .................................................................. 3

*United States v. Lo*
   231 F.3d 471 (9th Cir. 2000) .................................................................... 4

*United States v. Matt*
   838 F.2d 1356 (5th Cir. 1988) ................................................................ 11

*United States v. Montgomery*
   384 F.3d 1050 (9th Cir. 2004) .................................................................. 4

*United States v. Nevils*
   598 F.3d 1158 (9th Cir. 2010) (en banc) ............................................. 3, 11

*United States v. Oldenburg*
   762 F. Supp. 272 (N.D. Cal. 1991) .......................................................... 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

497417.02

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*United States v. Spirk*
  503 F.3d 619 (7th Cir. 2007)..............................................................4, 10

*United States v. Stull*
  521 F.2d 687 (6th Cir. 1975).................................................................11

*Utz v. Correa*
  631 F. Supp. 592 (S.D.N.Y. 1986)...........................................................7

## Federal Statutes

18 U.S.C. § 1341..............................................................................4, 9

18 U.S.C. § 1346.................................................................................12

## Federal Rules

Federal Rule of Criminal Procedure 29......................................................1, 3

Federal Rule of Criminal Procedure 29(a) .....................................................3

Federal Rule of Criminal Procedure 29(c) ...................................................17

## Other Authorities

*Black v. United States* Sup. Ct. No. 08-876................................................12

*Skilling v. United States* Sup. Ct. No. 08-1394 ...........................................12

*Weyhrauch v. United States* Sup. Ct. No. 08-1196 .......................................12

iii

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR A JUDGMENT OF ACQUITTAL
PURSUANT TO FED. R. CRIM. P. 29
CASE NO. CR 09-203-ODW

497417.02

TO THE UNITED STATES OF AMERICA AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at a date and time to be determined by this Court, Defendant Bruce Karatz will, and hereby does, move for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.  The motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Michael D. Celio, the pleadings, records, and files in this action, all matters of which this Court may take judicial notice, and any evidence or argument that may be presented at the hearing.

Dated:   June 14, 2010                                KEKER & VAN NEST LLP


By: */s/ John W. Keker*
JOHN W. KEKER
Attorneys for Defendant
BRUCE KARATZ

1

497417.02

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Of the twenty charged counts, the jury convicted Bruce Karatz of only four, all of which concerned not the alleged "backdating" practices that made up the bulk of the trial, but the failures to make certain disclosures in June and July of 2006.  Even those convictions, however, were based on legally insufficient evidence, and Bruce Karatz is entitled to a judgment of acquittal on all counts.

A judgment of acquittal is required for Counts Six and Seven, the mail fraud counts, for two independent reasons.  First, there was insufficient evidence (indeed, no evidence) showing that the relevant documents—the Ernst & Young management representation letter (Count Six) and the Hirst Report (Count Seven)—were ever mailed.  Second, and in any event, the government's evidence on those counts was legally insufficient.  The government's mail fraud case was based on two theories of fraud—a scheme to deprive KB Home of honest services, and a scheme to obtain money or property.  The Supreme Court will decide, by the end of June, whether the government's honest services theory of fraud is tenable, and we anticipate that the Court will decide the issue in Karatz's favor.  Although the government also argued that Karatz committed money or property fraud, the government failed to present any evidence that the scheme upon which Karatz was convicted—covering up, in 2006, the alleged backdating that took place between 1999 and 2005—was intended to obtain money or property.  Thus, a judgment of acquittal for Counts Six and Seven is required.

Counts Nineteen and Twenty—false statements to the SEC and to auditors—also rest on insufficient evidence, specifically concerning the element of materiality.  The Court properly instructed the jury that it must find as to the SEC count (Count Nineteen) that the false statements would have been material to a shareholder's investment decision concerning KB Home stock.   But the government failed to present *any* evidence that the false statements would have

497417.02

made any difference to a shareholder.  Further, as explained in Karatz's Rule 33 motion, the Court should have instructed the jury on the auditors count (Count Twenty) that materiality was likewise to be judged from the perspective of the reasonable investor (rather than the perspective of a reasonable auditor).  For the same reasons that the evidence is insufficient as to Count Nineteen, no properly instructed jury could have found beyond a reasonable doubt that the false statements Karatz made to auditors were material.

## II.    BACKGROUND

Bruce Karatz was indicted in March 2009 on twenty counts, including seven counts of mail fraud, five counts of wire fraud, three counts of securities fraud, three counts of filing false proxies, one count of filing a false quarterly report, and one count of making a false statement to the auditor of a public company.  Sixteen counts of the indictment involved an alleged scheme to enrich Karatz by improperly dating stock options in violation of KB Home's stock options plans and applicable accounting rules between 1999 and 2005.  The four remaining counts alleged that, in June and July 2006, after national attention became focused on the proper accounting treatment and disclosure of stock options, Karatz engaged in a scheme to conceal evidence regarding KB Home's past options practices.

During the seventeen day trial, the government focused primarily on KB Home's stock option practices from 1999 to 2005.  The events of June and July 2006 assumed a secondary role at best.  The government accordingly chose not to call most of the individuals with direct knowledge of the events that took place in 2006.  Notably, the government did not call Ben Hirst, KB Home's general counsel and author of a report issued in July 2006 concerning KB Home's past options practices.  Nor did the government call Dom Cecere, KB Home's Chief Financial Officer and co-signatory of letters and filings from 2006 that, the indictment alleged, concealed the truth about the company's earlier practices.

At the close of the government's case, Karatz moved for a judgment of

1  acquittal pursuant to Federal Rule of Criminal Procedure 29(a).  The Court

2  deferred ruling on that motion until after the defense presented its case.  That

3  motion remains pending.

4      After deliberating for nearly two weeks, the jury returned its verdict.  The

5  jury acquitted Karatz of the principal misconduct alleged by the government—all

6  sixteen counts involving KB Home's options dating practices prior to 2006.  The

7  jury found Karatz guilty only on the four counts concerning the events in June and

8  July 2006.

9      After the verdict was announced, Karatz orally renewed his motion for a

10  judgment of acquittal pursuant to Rule 29.  He respectfully renews that motion

11  again.  For the reasons elaborated below, the motion should be granted.

## III.   ARGUMENT

13      Under Federal Rule of Criminal Procedure 29(a), the Court must enter a

14  judgment of acquittal if the evidence is insufficient to sustain a conviction.  The

15  question is whether, viewing the evidence in the light most favorable to the

16  government, a rational trier of fact could find that the government proved its case

17  beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979);

18  *United States v. Lazarenko*, 564 F.3d 1026, 1035 (9th Cir. 2009).  "Although

19  *Jackson* requires the reviewing court initially to construe all evidence in the favor

20  of the government, the evidence so construed may still be so supportive of

21  innocence that no rational juror could conclude that the government proved its case

22  beyond a reasonable doubt."  *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir.

23  2010) (en banc).  In particular, entry of a judgment of acquittal is required if the

24  record evidence, construed in favor of the government, is "insufficient to establish

25  every element of the crime," which can happen "where mere speculation, rather

26  than reasonable inference, supports the government's case, or where there is a total

27  failure of proof of a requisite element."  *Id*. (internal citations and brackets

28  omitted).

3

497417.02

**A.     Acquittal Is Warranted On The Mail Fraud Counts (Counts Six And Seven) Because The Evidence Is Insufficient To Establish Use Of The Mails Beyond A Reasonable Doubt**

To establish a violation of the mail fraud statute, 18 U.S.C. § 1341, the government was required to prove beyond any reasonable doubt that Karatz *both* (i) participated in a scheme with the intent to defraud; *and* (ii) used or caused the use of the mails in furtherance of the scheme.  *United States v. Montgomery*, 384 F.3d 1050, 1063 (9th Cir. 2004).

"The knowing use of the mails . . . is an essential element of the [mail fraud] offense."  *United States v. Dondich*, 506 F.2d 1009 (9th Cir. 1974).  Because the statute "does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law, there is reason to be scrupulous in reviewing the evidence to assure that the mailing element is adequately proven."  *United States v. Lo*, 231 F.3d 471, 477 (9th Cir. 2000) (internal citation omitted; alteration in original).  The mailing element thus serves as "the gatekeeper for separating those cases that are the exclusive province of the states from those that may be tried in federal court under the mail fraud statute."  *Id*.

Proof of a mailing "may be proved by direct or circumstantial evidence," but it must be proved beyond a reasonable doubt.  *United States v. Brooks*, 748 F.2d 1199, 1202 (7th Cir. 1984).  Direct evidence sufficient to sustain a conviction includes "introduction of the envelope in which the correspondence was mailed."  *Id*. at 1202-03 (citing cases).  Circumstantial evidence, such as testimony about office custom or practice, can be sufficient, but only "so long as the circumstances proven directly support the inference and exclude all reasonable doubt to the extent of overcoming the presumption of innocence."  *Id*. at 1203.  Where the record provides "no more than a probability that the mails had been used," a mail fraud conviction must be reversed.  *Id*. at 1204; *see United States v. Spirk*, 503 F.3d 619, 623 (7th Cir. 2007) (reversing mail fraud conviction where the government failed

1   to introduce sufficient evidence that a letter "was mailed rather than hand-

2   delivered").

3          Of the seven counts of mail fraud charged in the indictment, the jury

4   convicted Karatz on only two:  allegedly mailing the Hirst Report to Ernst &

5   Young on July 6, 2006 (Count Seven), and allegedly mailing a management

6   representation letter to Ernst & Young on July 5, 2006 (Count Six).  As shown

7   below, however, the government failed to adduce sufficient evidence from which a

8   rational jury could conclude that Karatz used or caused the use of the mails with

9   respect to either document.  Accordingly, the two mail fraud convictions cannot

10  stand.

11         **1.     Hirst Report (Count Seven)**

12         The indictment charged that Karatz caused the Hirst Report to be mailed

13  from KB Home, in Los Angeles, California, to Ernst & Young, also in Los

14  Angeles, California.  But the government adduced *no* evidence at trial—none—

15  that the Hirst Report was ever sent by anybody, at any time, through the mail.  The

16  government did not introduce a registered mail receipt, an envelope with a

17  cancelled stamp, or a copy from the Ernst & Young mail room with a "received"

18  stamp.  There are no emails or letters in evidence stating that the report was mailed

19  from KB Home to Ernst & Young.  Nor did the government call anyone from KB

20  Home to testify that he or she sent such a letter.  Notably, the government *did* call a

21  witness to testify specifically about the mailing of documents at issue in Counts

22  One though Five.  The record concerning mailing of the Hirst Report, by contrast,

23  is utterly silent.

24         The only evidence that Ernst & Young even *received* the Hirst Report came

25  from Glenn Burr, a partner at Ernst & Young who worked as an independent

26  auditor.  But Burr never testified that he or anyone else at Ernst & Young received

27  a copy of the Hirst Report in the mail.  He could not even remember the date on

28  which Ernst & Young obtained the report.  As Burr testified at trial:

5

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR A JUDGMENT OF ACQUITTAL
PURSUANT TO FED. R. CRIM. P. 29
CASE NO. CR 09-203-ODW

1    MR. BUSTAMANTE:  During this time frame, did you
2    receive an internal investigative report from the company
     on stock options backdating practices?

3    MR. BURR:  I know sometime in June or July there was
4    a report provided to us.  I don't know the exact date.

5    Tr. at 3155:2-6 (For the Court's convenience, all cited pages of the transcript are

6    reproduced in Exhibit A to the Declaration of Michael D. Celio, filed herewith).

7    What is more, on cross-examination, Burr raised the distinct possibility that

8    the Hirst Report was given to him *by hand* when he attended the July 12, 2006,

9    Audit Committee meeting for KB Home:

10   MR. KEKER:  Now, you had a copy of the Hirst report
     either before or at this meeting; right?

11   MR. BURR:  Yes, sir.

12   MR. KEKER:  And did you read it?

13   MR. BURR:  Yes, sir, I read it at the meeting.

14

15   Tr. 3187:24-3188:3.

16   In its closing argument, the government attempted to salvage this count by

17   claiming that Exhibit 405, a July 18, 2006, letter from Ben Hirst that was admitted

18   over the defense's objection, provided sufficient evidence that the Hirst Report was

19   mailed to Ernst & Young.  But that exhibit only confirms the complete inadequacy

20   of the government's proof.  Like Burr's testimony, Exhibit 405 merely states that

21   the Hirst Report "was provided" to Ernst & Young.  *See* Exh. 405 (attached as

22   Exhibit B to the Celio Declaration).  Evidence that a document was "provided" to

23   someone, however, obviously does not prove at all, much less beyond all

24   reasonable doubt, that the document was *mailed* to that person.  The Third Circuit

25   thus held in *United States v. Hart*, 693 F.2d 286 (3rd Cir. 1982), that testimony that

26   a document had been "sent" was insufficient to establish that it had been mailed,

27   because "[t]he document could have been 'sent' without having been 'mailed.'"

28   *Id*. at 289.  Here, while Exhibit 405 ironically itself bears a notation explaining that

6

1    *it* was mailed to Ernst & Young, there is no similar notation on any version of the

2    Hirst Report indicating transmission by mail.

3    Just as in *Hart*, there are many ways that the Hirst Report could have been

4    "provided" to Ernst & Young without being mailed.  For example, it could have

5    been "provided" via electronic mail or facsimile, neither of which implicates the

6    mail fraud statute.  *See*, *e.g.*, *LaFlamboy v. Landek*, 587 F. Supp. 2d 914, 940

7    (N.D. Ill. 2008) ("[A] facsimile transmission invokes wire, not mail fraud.").

8    Moreover, as noted above, the report also could have been simply handed to Burr

9    at the Audit Committee meeting.  In fact, the trial record affirmatively suggests

10   that the report was provided to Ernst & Young by messenger, which likewise does

11   not implicate the mail fraud statute.  *See Utz v. Correa*, 631 F. Supp. 592, 596

12   (S.D.N.Y. 1986) (use of a messenger "does not violate the mail fraud statute").

13   Kristine Hennessey, who had worked at KB Home both as an administrative

14   assistant and as a paralegal, testified that it was the company's practice when

15   sending board and compensation committee materials to use a messenger service if

16   the intended recipient was "local," and to use FedEx if the recipient was not based

17   in Los Angeles.  Tr. 1044:11-12.  As Exhibit 405 establishes, KB Home's offices

18   are only a few miles away from Ernst & Young—KB Home is located in

19   Westwood and Ernst & Young is headquartered in downtown Los Angeles.  Given

20   the geographic proximity of the companies, the sensitive nature of the Hirst

21   Report, and Hennessey's testimony about KB Home's practice of sending

22   documents locally by messenger, the most reasonable inference is that KB Home

23   delivered the Hirst Report by messenger.

24   But it was not Karatz's burden, in any event, to prove that the Hirst Report

25   was provided by messenger, or by any other non-mail transmittal.  It was instead

26   the government's burden to prove, beyond any reasonable doubt, that the report

27   was provided through the mail and *not* by any other means of delivery.  Yet there

28   is literally no evidence whatsoever that the report was ever mailed to anyone at any

7

497417.02

1  time.  The sole record evidence concerning the means of delivery suggests the

2  report was either (or both) sent by messenger or handed out at the Audit

3  Committee meeting.  A mail fraud conviction cannot stand if the record provides

4  "no more than a probability that the mails had been used," *Brooks*, 748 F.2d at

5  1204, and here there is not even that.  Indeed, the strong probability, based on the

6  record, is that the mails were not used at all.  Karatz is entitled to a judgment of

7  acquittal on Count Seven.

8      **2.**    **Ernst & Young Management Representation Letter (Count Six)**

9      The government likewise failed to establish beyond a reasonable doubt that

10  the July 5, 2006, management representation letter at issue in Count Six was

11  mailed to Ernst & Young.  As it did for Counts One through Five, the government

12  could have called a KB Home employee to testify about whether the management

13  representation letter in question—or, indeed, any KB Home management

14  representation letter—had been sent to Ernst & Young by mail.  The government

15  did not do so for Count Six.  Nor did the government introduce a version of the

16  document bearing a "received" stamp, a registered mail receipt, a notation from the

17  mailing room, a FedEx shipping bill or delivery confirmation, or anything else—

18  like the notation on Exhibit 405, *see supra* Part III.A.1—that would indicate that

19  the document was mailed.

20      The only evidence elicited by the government as proof that the

21  representation letter was mailed was a single statement in Burr's testimony:

22         Well, generally for quarterly reviews, we would
   normally, since the company is preparing the financials,
23         we may not be at the company, they normally would fax
   us a signed copy of the letter to make sure we had it prior
24         to their filing because we need it prior to their filing.
   And then eventually they would send it to us FedEx mail.

25   

26  Tr. 3139:20-25.  That single statement does not approach the level of evidence that

27  could permit a rational jury to find beyond a reasonable doubt that KB Home

28  delivered the letter to Ernst & Young by mail, rather than by messenger or some

other non-mail means.

To begin with, the mailing element is not satisfied by abstract testimony about the "general" mailing practices of given entity. "While the element of mailing may be proven through . . . circumstantial evidence, we have held that to convict under § 1341, some reference to the correspondence in question is required." *United States v. Hannigan*, 27 F.3d 890, 893 (3d Cir. 1994); *see also United States v. Oldenburg*, 762 F. Supp. 272, 274-75 (N.D. Cal. 1991) (granting motion for acquittal where witnesses testified only about the "usual" practice for transmitting mail but could not say whether the mailing at issue would have been covered by that usual practice). Thus, for example, the government can attempt to prove circumstantially that a document was mailed by establishing that the particular document was placed in a mailroom bin from which documents are normally mailed. But without "some reference to the correspondence in question," *Hannigan*, 27 F.3d at 893, it is impossible to infer beyond a reasonable doubt that a "general" practice of mailing documents was followed with respect to a particular document—especially when other delivery options for the particular document were readily available.

Burr's testimony is, in fact, an extreme example of this problem. His statement described only what "normally" happened *at Ernst & Young*, not what would normally happen for this or any other document *at KB Home*. Indeed, Burr testified that he did not begin working on the KB Home account until the end of 2005, Tr. 3123:6-9, 3124:16-19, and he thus could not have testified about what "normally" happened at KB Home. And the undisputed record showed that, when delivering important documents to recipients located in Los Angeles, KB Home normally effected the delivery by messenger, not by mail. *See supra* Part III.A.1

In *United States v. Joyce*, 499 F.2d 9 (3d Cir. 1974), the Third Circuit held that evidence of a customary practice of mailing was insufficient to support a mail fraud conviction where the sender's and recipient's offices were both in the same

large city (Chicago) because the document could just as easily have been hand-delivered.  *Id*. at 19.  Precisely the same is true here.  Neither Burr nor any other witness or document suggested in any way—much less proved beyond all reasonable doubt—that KB Home departed from its typical practice for this particularly important document and sent it by mail within Los Angeles rather than deliver it directly by hand.  Even if Burr's testimony concerning Ernst & Young's general experience could be probative of the general practices of *some* senders— for example, a company based in New York that typically corresponds with Ernst & Young through FedEx—it could not plausibly be probative of the practices of a sender who is only a few miles away within Los Angeles, and who routinely sends other important documents by messenger when the recipient is local.  *See*, *e.g.*, *Spirk*, 503 F.3d at 623; *Joyce*, 499 F.2d at 19.

Indeed, Burr's *own* testimony, by its own terms, confirms that this particular document likely would not have been mailed.  Burr testified that Ernst & Young generally receives management representation letters by fax and eventually by FedEx because Ernst & Young personnel "may not be at the [client] company" when the management representation letter is due.  Tr. 3139:21-22.  Here, however, Ernst & Young auditors were at KB Home during the relevant time period, as evidenced by Burr's attendance at KB Home's Audit Committee meeting on July 12, 2006.  A KB Home employee thus could have faxed Ernst & Young a copy of the letter when it was signed on July 5, 2006, and hand-delivered a copy to Burr or one of his associates at the Audit Committee meeting one week later, on July 12, 2006.

Finally, even as to Ernst & Young's own experience as a recipient of documents, Burr lacked the personal knowledge necessary to establish that this particular document was received by Ernst & Young through the mail.  Courts will accept testimony of a company's custom or practice of mailing as proof of the mailing element only where the witness has direct personal knowledge of the

company's mailing practices.  *See United States v. Matt*, 838 F.2d 1356, 1359 (5th Cir. 1988) (testimony that witness "whose job it was to receive the reports as they came through the mail" remembered receiving the mailing in question held sufficient to satisfy mailing element); *see also United States v. Brackenridge*, 590 F.2d 810, 811 (9th Cir. 1979) (per curiam) (testimony from bank-by-mail manager about mailing practice sufficient to establish mailing).  But courts decline to accept testimony by senior employees about a custom or practice of mailing where, because of their seniority, they are unlikely to have personal knowledge of the company's mailing practices.  *See Hannigan*, 27 F.3d at 894 (explaining that, while "not necessary that someone actually employed in the mail room establish" mailing customs, the testimony of a claims supervisor at an insurance company was insufficient to establish mailing element because "she had no personal knowledge concerning the routine mailing practices of the mail room"); *United States v. Stull*, 521 F.2d 687, 690 (6th Cir. 1975) ("The president-manager's testimony that he received the orders through the mail is no more than a conclusion, particularly in light of his admission that his secretary opened the mail.").

Burr testified that he was a partner at Ernst & Young and had thirty years of experience as a practicing accountant. Tr. 3122:24-3123:2.  Given his prominent status within the company, it stands to reason that he did not trifle with the fax machine or wait for the daily FedEx delivery.  Accordingly, his testimony about Ernst & Young's "general" custom or practice of receiving management representation letters fails to establish a mailing for the same reasons as the testimony in *Hannigan* or *Stull*.

Ultimately, given the government's failure of proof, one can only speculate as to how the management representation letter was actually transmitted.  A judgment of acquittal is required where "mere speculation, rather than reasonable inference, supports the government's case." *Nevils*, 598 F.3d at 1167.  At the very

11

497417.02

1    most, a rational jury could find from Burr's statement that it was *possible* that KB

2    Home sent the July 5, 2006, representation letter to Ernst & Young by FedEx.  But

3    that method of delivery was far from the most likely possibility, as the

4    uncontradicted record made clear.  The government's "burden of proof is more

5    than possibly, probably, or likely—it is beyond a reasonable doubt."  *United States*

6    *v. Kellam*, 568 F.3d 125, 145 (4th Cir. 2009).  A mere probability that the

7    document was mailed will not satisfy the mailing element.  *Brooks*, 748 F.2d at

8    1204.  If the government had actual evidence that this particular management

9    representation letter was mailed, such as a witness or mail-receipt stamp, there can

10   be no doubt that the government would have introduced that evidence—as it did

11   for the documents at issue in Counts One through Five.  The government presented

12   no such evidence concerning Count Six, requiring entry of a judgment of acquittal.

13   **B.    Acquittal Is Also Necessary On Counts Six And Seven Because The**
14   **Evidence Is Insufficient To Establish Honest-Services Or Money-Or-Property Fraud**

15           Counts Six and Seven fail not only for lack of evidence on the essential

16   mailing element, but also, and independently, because the government failed to

17   establish that Karatz engaged either in a scheme to deprive anyone of "honest

18   services" or in a scheme to obtain money or property.

19           **1.    Honest Services**

20           The honest services statute, 18 U.S.C. § 1346, prohibits a scheme to deprive

21   another of "the intangible right of honest services."  The Supreme Court is

22   presently considering three challenges to the honest-services statute in *Skilling v.*

23   *United States*, Sup. Ct. No. 08-1394, *Black v. United States*, Sup. Ct. No. 08-876,

24   and *Weyhrauch v. United States*, Sup. Ct. No. 08-1196.  Consistent with the

25   arguments advanced in those cases, Karatz submits that § 1346 is

26   unconstitutionally vague, or at least is limited to bribes and kickbacks, neither of

27   which is present in this case.  Those arguments are not elaborated here, because the

28   Supreme Court will decide the honest-services trilogy by the end of June 2010—

497417.02

1    before this Court is likely to rule on this motion—conclusively resolving those

2    issues.  In the unlikely event the Supreme Court resolves the cases in a way that

3    leaves theoretical room to salvage Karatz's convictions on the honest services

4    theory asserted in Counts Six and Seven, Karatz reserves the right to submit further

5    argument based on whatever standard the Supreme Court sets forth.

6    **2.    Money or Property**

7    Karatz is also entitled to a judgment of acquittal on the money-or-property

8    theories of Counts Six and Seven.  Even viewing the record in the light most

9    favorable to the government, the conduct at issue in these counts does not reflect

10   any scheme or plan for obtaining money or property.

11   The government's basic theory of money or property fraud was that Karatz

12   devised a scheme to obtain money in the form of backdated options, and that he

13   received backdated options between 1999 and 2005.  As the government explained

14   in its closing argument:

15   We would submit the evidence is pretty clear that the
     victims in this case did part with money or property, that
16   Mr. Karatz got discounted options as a consequence of
     this fraudulent scheme.  He exercised some of them, and
17   he took money, then, from the company because he paid
     an exercise price that was lower than what the fair market
18   value of those options were.

19   So all that explanation of the game to Mr. Karatz by the
     backdating, that would cause a reasonable person or a
20   corporation to part with money or property.  They lost
     money through his backdating.

21

22   Tr. 4564:14-24 .

23   The jury, however, rejected the government's theory, acquitting Karatz on

24   every backdating count.  The jury instead convicted Karatz only for conduct in

25   June and July 2006 allegedly involving concealment of evidence concerning KB

26   Home's past options practices.  But as a matter of law, concealment or "cover up"

27   of a scheme to defraud is not part of the underlying scheme to defraud.  *See*, *e.g.*,

28   *SEC v. Papa*, 555 F.3d 31, 38 (1st Cir. 2009).  Were it otherwise, a mail fraud

13

scheme could exist in perpetuity, and well beyond the statute of limitations for the underlying fraud. The Supreme Court rejected precisely this approach in the conspiracy context, explaining that it could not "accede to the proposition that the duration of a conspiracy can be indefinitely lengthened merely because the conspiracy is kept a secret, and merely because the conspirators take steps to bury their traces, in order to avoid detection and punishment after the central criminal purpose has been accomplished." *Grunewald v. United States*, 353 U.S. 391, 405 (1957).

That is not to say that no acts of concealment could ever be part of the underlying mail fraud scheme. Indeed, the Supreme Court in *Grunewald* explained that there is a "vital distinction . . . between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." *Id.* The former category might encompass Karatz's alleged failure to disclose the fact of backdating to the compensation committee during their October meetings in the years in which the backdating took place—that alleged conduct of concealment arguably was directly in furtherance of the underlying backdating scheme. But Karatz's alleged actions concerning the four counts of conviction stand on an entirely different footing. He allegedly took those actions to avoid detection or retain his profits after the backdating scheme was complete. Such acts represent nothing more than a desire to avoid apprehension—"a concomitant, certainly, of every crime since Cain attempted to conceal the murder of Abel from the Lord." *Grunewald*, 353 U.S. at 406.

Thus, the government cannot argue that the mailings in July 2006 were in furtherance of the alleged scheme to backdate stock options. Those mailings instead were in furtherance of a *separate scheme* to cover up prior conduct by concealing information relating to KB Home's stock options. As to that scheme, there is no separate effort to obtain money or property—the money or property is

14

1  already gone.  That is not to say such conduct is necessarily lawful, but simply that

2  it does not constitute the crime of money or property fraud.  The proper redress for

3  misrepresentations or false statements made to conceal prior alleged misconduct is

4  found in the statutes criminalizing obstruction of justice—the offense to which

5  Gary Ray pleaded guilty of conspiring to commit, based on precisely the same

6  conduct—and not in the mail fraud statute.  *See Papa*, 555 F.3d at 38 ("False

7  statements that impede discovery of a crime or fraud that has already been

8  completed may well be punished in some circumstances—for example, as perjury

9  or obstruction of justice.").

10  **C.   The Government's Proof Of Materiality For The Statements Alleged In**
     **Count Nineteen Failed As A Matter Of Law And Fact**

11

12      On Count Nineteen (filing a false 10-Q), the government was required to

13  prove beyond a reasonable doubt "that the disclosure of the omitted fact would

14  have been viewed by the reasonable investor as having significantly altered the

15  'total mix' of information made available."  *Basic, Inc. v. Levinson*, 485 U.S. 224,

16  231-32 (1988) (internal quotations and citation omitted).  Ultimately, the

17  prosecution must establish that a reasonable investor would have acted differently

18  if the omission or misrepresentation had never occurred.  *See Livid Holdings, Ltd.*

19  *v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  There is no

20  such evidence in the record.

21      The simplest way to determine how a reasonable investor would view a

22  particular statement is to call one as a witness and ask him or her.  But the

23  government chose not to call even a single investor to testify about the

24  considerations that go into purchasing and/or selling KB Home shares and what

25  affects the "total mix" of information.  Without such testimony, there is no

26  evidence from which a rational trier of fact could find materiality on Count

27  Nineteen.

28      The only witness the government called to discuss the issue of investor

15

1   materiality was Robert McCormick, who was a proxy investment advisor with a

2   company called Glass Lewis when the 2006 annual report would have been

3   issued.[*]  Tr. 2519:3.  McCormick testified that he never made any decision—or

4   even made a recommendation—about whether an investor should buy, sell, or hold

5   KB Home stock:

> Q:  You don't actually make investment decisions at
> Glass Lewis; right?
>
> A.   That's right.
>
> Q.   You didn't actually—you don't actually make
> investment recommendations at Glass Lewis, do you?
>
> A.   We do not.
>
> . . .
>
> Q.  So your work actually doesn't have anything to do
> with any decisions someone makes to buy or sell a
> security; correct?
>
> A.   That's right.
>
> Q.   And you certainly don't recall ever participating in
> any way in a decision to buy or sell KB Home stock, do
> you?
>
> A.   No.

18  Tr. 2555:20-2556:9.

19          McCormick's testimony focused exclusively on KB Home's proxy

20  statements, as it was McCormick's job to recommend to his clients how they

21  should vote their shares in response to KB Home's annual proxy statement.  Tr.

22  2518:12-13.  And even if McCormick's proxy expertise qualified him to opine on

23  investor materiality, his testimony would be insufficient to establish what a

24  reasonable investor would have thought about the 2006 quarterly report for the

25  simple reason that there was no testimony that he had read it.  In short,

---

[*] The government elicited some testimony from Glenn Burr, one of the Ernst &
Young auditors, about considerations that would affect his decision-making
process, but information about what might be material to an *auditor* says nothing
about what might be material to a reasonable *investor*.

497417.02

1  McCormick's testimony cannot establish the materiality of the alleged

2  misstatements in the July 2006 quarterly report.

3  **D.     Under The Proper Instruction For Materiality In Count Twenty, The**
        **Government Failed To Establish That The False Statements Were**
4       **Material**

5          At trial, the Court instructed the jury that a statement was material for

6  purposes of Count Twenty (false statements to auditors) if it has "a natural

7  tendency to influence or, is capable of reasonably influencing, the actions of the

8  *accountant* to whom it was addressed." Tr. 4825:21-24. For the reasons explained

9  in his Rule 33 motion for a new trial, Karatz respectfully submits that the

10 materiality instruction for Count Twenty was erroneous and that materiality for

11 Count Twenty, as with Count Nineteen, must be evaluated from the standpoint of a

12 reasonable investor. Thus, for the same reasons presented here for Count

13 Nineteen, the government's evidence was insufficient to satisfy the materiality

14 element for Count Twenty, and the Court should enter a judgment of acquittal on

15 that count.

16                        **IV.   CONCLUSION**

17         For the foregoing reasons, this Court should enter a judgment of acquittal

18 pursuant to Federal Rule of Criminal Procedure 29(c).

19

20 Dated:  June 14, 2010                    KEKER & VAN NEST LLP

21

22                              By: */s/ John W. Keker*_____

23                                  JOHN W. KEKER
                                    Attorneys for Defendant
24                                  BRUCE KARATZ

25

26

27

28

                          17
DEFENDANT'S NOTICE OF MOTION AND MOTION FOR A JUDGMENT OF ACQUITTAL
PURSUANT TO FED. R. CRIM. P. 29
CASE NO. CR 09-203-ODW

497417.02